JUDGE HINES
delivered the opinion of the -court.
In 1874 appellant Julia A. Collins purchased of J. N. Manley a tract of land, for which she and her husband, P. O. *622 Collins, agreed to pay, within twelve months, $956.15. Manley executed a deed to Julia A. Collins for the land, reserving a lien to secure the purchase-price, which was evidenced by the note of appellants. This note, for a valuable consideration, was assigned by Manley to appellees, who, after maturity, instituted an action thereon, and sought to enforce their lien on the land. Appellants answer and say they are housekeepers, with a family, are in possession of the land, and that Manley purchased the land as agent for appellant Julia A. Collins, paid for it with her funds, and that he held the legal title in trust for her, and that she is in any event entitled to a homestead in the land. Pending the litigation the court below appointed a receiver, who took charge of and rented out the land and ultimately rendered a decree in favor of appellees, directing a sale and an appropriation of the proceeds to the payment of appellees’ claim.
Among the errors assigned is the order of the court placing the land in charge of a receiver. This was done upon motion and proof to the effect that the land was not worth more than the amount of appellees’ debt, if so much. There was no evidence of waste or improper cultivation, but the record showed that appellants were insolvent.
Section 328 of Myers’s Civil Code is as follows: "In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of plaintiff or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is. shown that the property or fund is in danger of being lost, removed, or materially injured, the court may appoint a receiver to take charge thereof during the pendency of the action, and may order and coerce the delivery of it to him.”
Section 329 reads, " In an action by a mortgagee for the *623 foreclosure of his mortgage and sale of the mortgaged property, a receiver may, in like manner, be appointed, where it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage-debt.”
Do the facts in this case bring it vdthin the provisions of these sections, and if not, is there any authority for such an order independent of the Code?
We think it clear that the Code does not embrace such a case. This is not an action to vacate a fraudulent purchase of property; there is no evidence that the property sought to be subjected is in danger of being lost, removed, or materially injured, nor is this an action by a mortgagee for the foreclosure of a mortgage and the sale of the mortgaged property.
Prior to the adoption of the Code, the absolute right to take the rents and profits resulted from and was dependent upon the legal right of the mortgagee to oust the mortgagor from the possession. That right no longer exists, and the existence of the remedy for subjecting the rents depends upon the mortgagee bringing himself within the provisions of the sections quoted. (Newport & Cincinnati Bridge Company v. Douglass, &o., 12 Bush, 705.) The right to the rents and profits of mortgaged property is a mere matter of contract, and to be enforced, if at all, upon the conditions and in the manner pointed out by the Code. (Douglass, &c. v. Cline, &c., 12 Bush, 621.)
Courts of equity have always been reluctant to interfere with the possession of real estate by the appointment of a receiver, and they never do so unless the remedy at law is incomplete. When, for instance, the title is involved or there is a proceeding to enforce a lien, and the party in possession claiming title is insolvent and is committing waste, or when the plaintiff is entitled to the rents under his contract and the *624 party in possession is insolvent, and the property insufficient to pay the claim. (Kerr on Receivers, 78; High on Receivers, secs. 557, 558, 559, and 611.) The cases here referred to are where the title has been in dispute. Even then the plaintiff must show, first, strong ground of title and a reasonable probability that he will ultimately prevail; and, second, that there is imminent danger to the property or to the rents and profits.
Independent of any Code provision, it appears to us that the vendor who conveys and puts his vendee in possession, reserving a lien for purchase-money, reserves that lien upon the land and not upon the rents or profits. He vests the vendee with the legal title and the right, under the contract of sale, to use and occupy the property. He looks to the land and to his personal judgment against his vendee for the satisfaction of his claim. The right to possess and use the land by the vendor does not follow as an incident to the breach of the vendee’s covenant to pay. The vendor occupies a no more favorable attitude, so far as concerns the property and property-rights of the vendee, than any other- creditor, except to the extent of his lien upon the land sold by him. (Jordan v. Beal et al., 51 Ga. 603.)
Appellants also assign for error the action of the court in overruling exceptions to certain depositions.
It appears that appellants had given notice to take depositions at a certain time and place, and that they would continue from day to day until they had completed the taking. After this notice was served upon appellees, and while appellants were engaged in taking depositions in pursuance to their notice, appellees gave a counter-notice, and proceeded to take the depositions complained of while appellants were still engaged under the notice given by them, and they were therefore unable to be present at the taking of appellees’ depositions or to cross-examine. We do not think that this is such a notice as is *625 contemplated by the Code. Nor does it alter the case that appellants might have obtained permission to cross-examine, and thus have completed the depositions before the case was finally submitted. They were entitled to be present at the' direct examination. The value of this right, even in ordinary eases, is almost invaluable, and its exercise will in no case be willingly dispensed with by a cautious practitioner. As all the facts indicated appear upon the face of the papers, no bill of exceptions was necessary, and the court should have sustained the exceptions.
As the case must be remanded for the reasons assigned, and as the proof may not be the same when again passed upon by the court below, it is not proper for us to express an opinion upon the evidence bearing upon the defense set up by appellees.
Wherefore the judgment is reversed, and cause remanded for further proceedings consistent with this opinion.