## Aubrey v. Aubrey.

December 13, 1946.

Steinfeld & Steinfeld and Andrew S. Hyman for appellant.

S. Rush Nicholson for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This action reaches us by appeal from the Jefferson Circuit Court.

The appellee was plaintiff below. His action for divorce was based on the ground of cruel and inhuman treatment. The defendant, by answer, denied the allegations of plaintiff's petition, and by counterclaim sought divorce on the ground of cruel and inhuman treatment. Each asked for the custody of their infant child.

The Commissioner heard the testimony introduced by both parties and in his report recommended that the plaintiff be granted an absolute divorce; that he be given the custody of the child, and that the defendant be denied alimony. The court confirmed the Commissioner's report and entered a judgment accordingly, from which this appeal is prosecuted.

The appellant seeks reversal of the judgment insofar as the custody of the child and appellant's right to alimony are concerned.

These parties were married in 1929, and at the time of the commencement of the action, their only child was 14 years of age. However, the defendant had an older son by a former marriage. It appears that the former husband was living somewhere in California. Comparatively few witnesses testified, the chief portion of the testimony being given by the parties to the action. Through a number of years there had been troubles and difficulties in this home. The chief difficulty seems to center more particularly about the gambling of the defendant and her repeated issuance of worthless checks. This, coupled with her arriving home at all hours of the

night, and even making a few extended and unannounced trips to various parts of the United States, precipitated the disaster. There appears to have been no abatement of the ills that afflicted this home, but on the contrary, they seem to recur with unfailing regularity. The husband testified concerning all of the above. His testimony was corroborated in a great measure by the little 14 year old girl, who, testifying further, stated that her mother had taken her to night clubs, and on one occasion played poker with a bunch of men. A nearby neighbor corroborated in part the testimony of the husband, wherein she stated that on numerous occasions, and at all hours of the night, she would receive calls from the defendant, who asked her to relay messages to defendant's husband to come and meet her, and that upon each occasion, she had found the husband at home with the little girl. There were filed in the record numerous exhibits of worthless checks; letters received from attorneys and business organizations attempting to collect upon worthless checks given them by her; snapshot picture of two men with whom she claimed to have hitch-hiked a ride to Chicago; and a letter written to her former husband. The defendant denied much of this evidence. She contradicted her husband in many statements that he had made concerning her conduct, and in his claim that he had paid a great many of these worthless checks. She stated that she paid them herself. To support her ground for divorce, she stated that her husband was cross and quarrelsome. He evidently did do considerable quarreling. This he undertook to justify by stating it was all brought about through his reprimanding her for writing these worthless checks, her gambling, and absence from home so much. The defendant did not tell a very convincing story. The Commissioner in commenting upon it in his report stated as follows: "* * * The defendant's conduct is of such character as to cause your commissioner to make the above recommendations. The defendant refused to answer questions and made such incredible statements that your commissioner could not believe anything she said."

We are not impressed with the appellant's contention that plaintiff was not entitled to an absolute divorce, but instead there should have been granted only a divorce a mensa et thoro, carrying alimony for the defend-

ant. An examination of the record evidences that this contention has no real support in fact. The appellant was repeatedly guilty of acts tending to humiliate her husband and calculated to disturb his peace and happiness. Her conduct, obviously, brought about the destruction of this home. Her present plight is the direct result of her own acts. We held in Beutel v. Beutel, 262 Ky. 805, 91 S. W. 2d 528, 529: ''* * * The question of alimony rests largely in the discretion of the trial court, and, in allowing or disallowing it and in fixing the amount thereof, if any be allowed, the court will take into consideration the estate and income of the wife and the relative financial conditions of her and her husband and, among other things, the relative cause or fault of the respective parties culminating in the divorce.'' See also Hockensmith v. Hockensmith, 286 Ky. 448, 151 S. W. 2d 37, and Nall v. Nall, 287 Ky. 355, 153 S. W. 2d 909.

We consider now the matter of the custody of the child. It is a well settled rule of this court that the matter of the custody of a child is controlled in a large measure by a consideration of the welfare of the child. True, the fitness of the parent is always a corollary consideration. The wishes of the parents become secondary. However, the above rule is not entirely inflexible. Consequently, the question of custody must be determined by the facts in each particular case. See Burke v. Burke, 267 Ky. 734, 103 S. W. 2d 291; Perkins v. Perkins, 291 Ky. 571, 165 S. W. 2d 152; and Slusher v. Slusher, 298 Ky. 400, 182 S. W. 2d 972.

The record justified the report submitted by the Commissioner and abundantly supports the judgment of the chancellor.

The judgment is affirmed.